IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 03–cv–02398–EWN–CBS

ERIC L. HALL,

    Plaintiff,

v.

DENVER SHERIFF'S DEPARTMENT, DEPARTMENT OF SAFETY,
THE CITY AND COUNTY OF DENVER, a municipal corporation,

    Defendant.

---

### ORDER AND MEMORANDUM OF DECISION

---

This is a Title VII discrimination and section 1983 case. Plaintiff Eric Hall alleges that Defendant Denver Sheriff's Department, Department of Safety, City and County of Denver, violated Title VII by discriminating against him because of his race and gender, and violated section 1983 by depriving him of his property interest in his sick and vacation leave. This matter is before the court on "Defendant's Motion for Summary Judgment," filed July 26, 2004. Jurisdiction is based on 28 U.S.C. § 1331 (2004).

### FACTS

*1.*  *Factual Background*

Plaintiff is an African-American male. (Def.'s Mot. for Summ. J. [filed July 26, 2004]; Br. in Supp. of Def.'s Mot. for Summ. J., Statement of Undisputed Material Facts ¶ 1 [filed July

26, 2004] [hereinafter "Def.'s Br."]; *admitted at* Hall's Resp. to the Def.'s Mot. for Summ. J., Resp. to Undisputed Facts ¶ 1 [filed Aug. 31, 2004] [hereinafter "Pl.'s Resp."].) Defendant hired Plaintiff as a Deputy Sheriff on August 19, 1991. (Def.'s Br., Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 2.) Plaintiff voluntarily resigned his position with Defendant effective March 26, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 3.) Upon resignation, Plaintiff received payment for all accrued vacation leave, overtime compensation, and other amounts due to him at the time of his separation. (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 4.)

The Denver Police Department ("DPD") hired Plaintiff on April 1, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 5.) Plaintiff voluntarily resigned his position with the DPD on June 4, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 6; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 6.) Defendant re-hired Plaintiff as a Deputy Sheriff on June 11, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 7.) Pursuant to the Denver city charter, Denver Deputy Sheriffs are career service employees. (*Id.*, Statement of Undisputed Material Facts ¶ 8; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 8.)[1] Compensation, benefits, and other terms and conditions of employment for Deputy Sheriffs are governed by the city charter, personnel rules promulgated by the Denver career service authority,

---

[1] The Denver career service and civil service are two entirely separate personnel systems. (Def.'s Br., Statement of Undisputed Material Facts ¶ 10; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 10.)

and collective bargaining agreements between the bargaining agent for Deputy Sheriffs and Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 11; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 11.) Compensation, benefits, and other terms and conditions of employment for Denver police officers are governed by the city charter, policies and procedures established by the Chief of Police and the manager of Safety, and collective bargaining agreements between the bargaining agent for police officers and Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 12; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 12.)

At the time Plaintiff was rehired by Defendant in June 1998, John Simonet was the Director of Corrections and Undersheriff. (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 13.) When Plaintiff was rehired by Defendant in June 1998, Plaintiff requested that his sick and vacation leave accruals, seniority, and longevity pay be based upon his original hire date with Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 14.) Simonet denied Plaintiff's request. (*Id.*, Statement of Undisputed Material Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 15.) Accordingly, Plaintiff's vacation and sick leave accrual rates, longevity pay rate, and seniority have been based upon a continuous service/hire date of June 11, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 16.)

Stan Marin, a Hispanic male, resigned from his position as a Deputy Sheriff with Defendant on August 10, 2001, in order to join DPD. (*Id.*, Statement of Undisputed Material Facts ¶¶ 17, 19; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 17, 19.) Marin subsequently left the DPD and was rehired by Defendant on August 27, 2001. (*Id.*, Statement of

Undisputed Material Facts ¶ 20; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 20.) At the time Defendant rehired Marin in August 2001, Marin requested that his sick and vacation leave, seniority, and longevity be based upon his original hire date with Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 23; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 23.) Marin's request was denied by Fred J. Oliva, Director of Corrections and Undersheriff. (*Id.*, Statement of Undisputed Material Facts ¶¶ 24–25; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 24–25.) Marin pursued the matter with Jim Yearby, Personnel Director of the Career Service Authority. (*Id.*, Statement of Undisputed Material Facts ¶ 3; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 3.) Yearby determined that Marin's request for reinstatement of vacation and sick leave should be honored. (*Id.*, Statement of Undisputed Material Facts ¶ 27; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 27.) Thus, Defendant and Marin agreed to use November 16, 1981 as Marin's accrual date for purposes of seniority and benefits, however, the 400 hours of sick leave Marin forfeited upon resignation were not restored. (*Id.*, Statement of Undisputed Material Facts ¶¶ 29, 30; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 29, 30.) In exchange, Marin agreed not to pursue legal action against Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 31; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 31.) Upon learning that Defendant reinstated Marin's seniority, Plaintiff filed a formal grievance under the career service grievance process which Oliva denied. (*Id.*, Statement of Undisputed Material Facts ¶ 37; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 37.) Plaintiff subsequently appealed Oliva's decision to the Hearing Officer of the career service board. (*Id.*, Statement of Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 39.) On August 28, 2002, the Hearing

Officer deemed that Plaintiff abandoned his administrative appeal and dismissed Plaintiff's appeal with prejudice. (*Id.*, Statement of Undisputed Material Facts ¶ 40; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 40.) Plaintiff did not exercise his right to appeal the Hearing Officer's dismissal to the career service board. (*Id.*, Statement of Undisputed Material Facts ¶ 41; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 41.) After learning that Defendant reinstated seniority for another employee, Anna Robinson, an African-American female, Plaintiff pursued a grievance and demand for arbitration under the collective bargaining agreement between Defendant and the Deputy Sheriffs' union. (*Id.*, Statement of Undisputed Material Facts ¶ 42; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 42.) Defendant denied the grievance and demand for arbitration as untimely and beyond the scope of the collective bargaining agreement. (*Id.*, Statement of Undisputed Material Facts ¶ 43; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 43.)

### 2. *Procedural History*

Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 29, 2003. (Def.'s Br., Ex. 18 [Charge of Discrimination].) Thereafter the EEOC issued Plaintiff a right to sue letter and Plaintiff filed his complaint in this court on November 26, 2003. (Compl. and Jury Trial Demand [filed Nov. 26, 2003].) Plaintiff asserted two claims for relief: (1) racial and gender discrimination in violation of Title VII; and (2) violation of section 1983. (*Id.* ¶¶ 27–34.) Defendant filed its answer on January 26, 2004. (Def.'s Answer [filed Jan. 26, 2004].) Plaintiff later withdrew his section 1983 claim as reflected in the Preliminary Pretrial Order. (Prelim. Pretrial Order [filed May 26, 2004] [hereinafter "Prelim. Pretrial Order"].)

On July 26, 2004, Defendant filed its motion for summary judgment. (Def.'s Br.) Defendant argues that (1) Plaintiff's Title VII claim is untimely because he did not file a Charge of Discrimination within 300 days of his return to work for Defendant, (Def.'s Br. at 9–10); (2) even if Plaintiff's claim is timely, Plaintiff still cannot establish a Title VII claim, (*id.* at 10–14); and (3) Plaintiff agreed to dismiss his section 1983 claim but has not yet done so, and in any event Plaintiff cannot establish municipal liability necessary for a section 1983 action. (*Id.* at 15–17.) Plaintiff filed his response on August 31, 2004. (Pl.'s Resp.) Defendant filed its reply on September 27, 2004. (Def.'s Reply Br. in Supp. of Mot. for Summ. J. [filed Sept. 27, 2004] [hereinafter "Def.'s Reply"].)

## ANALYSIS

### 1. *Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead

designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990]).

### 2.  *Title VII Claims*

Plaintiff alleges that Defendant discriminated against him on the basis of his race and gender in violation of Title VII. (Compl. ¶¶ 27–30.)[2] Plaintiff asserts that he was treated "less favorably than those who are not African-American men" because he was denied "reinstatement of his sick and vacation leave, seniority, and longevity pay rates, retroactive back to his original hire date." (*Id.* ¶¶ 22, 29.) Defendant alleges that it is entitled to summary judgment on Plaintiff's Title VII claims.[3]

---

[2] Plaintiff couches both the race and gender discrimination claims as one claim for relief. Thus, I will evaluate his claims as such.

[3] Defendant alleges that Plaintiff's claim is not timely. (Def.'s Br. at 9–10.) Defendant contends that "the alleged discriminatory act of which Plaintiff complains occurred upon his return to [work for] Defendant on June 11, 1998. However, Plaintiff did not file his charge of discrimination with the EEOC until May 29, 2003." (*Id.* at 9.) Defendant is generally correct, that the 300-day period begins to run as soon as the discriminatory act occurs and that fact is communicated to Plaintiff. *Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980). Here,

Plaintiff's first claim for relief alleges discrimination based on race and gender. (*Id.* ¶¶ 27–30.) The elements with respect to Plaintiff's race and gender discrimination claims under Title VII are the same. *See Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225–27 (10th Cir. 2000); *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994).

If, as here, Plaintiff's claim is based upon a disparate treatment analysis in reliance upon indirect evidence, he must first meet his initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 802 (1973). Once Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* "At the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual — i.e.

---

that date would be the day Plaintiff was re-hired in 1998. Plaintiff asserts, however, that where the possibly discriminatory nature of an employment decision is discernible only upon later events, the 300-day period does not commence until Plaintiff is or should be aware of those later events. (Pl.'s Resp. at 5–8.) While the Tenth Circuit has not specifically addressed this issue, other circuits and lower courts have determined that Plaintiff's position is correct. *See Tucker v. United Parcel Serv.*, 657 F.2d 724, 726 (5th Cir. 1981) (the filing period began to run only after the plaintiff learned or could have learned of the number of white drivers treated differently than the plaintiff after plaintiff's last day on the job); *Moore v. Lion Oil Co.*, 652 F.2d 746, 748 (8th Cir. 1981) (the statutory period commenced not upon the disapproval of the position for the plaintiff, but upon the hiring of a man for the same position approximately four months later); *Wolfolk v. Rivera*, 729 F.2d 1114, 1117 (7th Cir. 1984) (time limit was tolled until the plaintiff, a black male, discovered that he was being paid less than white employees doing the same job); *Clark v. Emerson Elec. Co.*, 751 F. Supp. 821, 822 (E. D. Mo. 1990) (the 300-day period does not begin to run until the plaintiff is or should be aware of later events giving rise to his discrimination claim). Thus, in absence of (1) Tenth Circuit precedent counseling otherwise, and (2) a colorable argument by Defendant to the contrary, I conclude that Plaintiff's Title VII claim commenced after he learned that Defendant treated other employees differently than it treated him with respect to reinstatement of seniority.

unworthy of belief." *Randle* v. *City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). If Plaintiff succeeds both in making out a prima facie case of discrimination and in showing that Defendant's reasons are pretextual, Plaintiff's claims will withstand summary judgment. *Id.*

### a.    *Prima Facie Case*

To establish a prima facie case of racial and gender discrimination Plaintiff must show: (1) he is a member of the class protected by the statute; (2) he suffered an adverse employment action; and (3) he was treated less favorably than others not in the protected class. *Sanchez v. Denver Public Schs.*, 164 F.3d 527, 531 (10th Cir. 1998); *Cole v. Ruidosos Mun. Sch.*, 43 F.3d 1373, 1380 (10th Cir. 1994). The parties do not dispute that Plaintiff is a member of a protected class. Thus, I will only address elements two and three.

Defendant contends that Plaintiff cannot establish a prima facie case of either gender or race discrimination because he did not suffer an adverse employment action. (Def.'s Br. at 11.) An adverse employment action occurs when there is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Annett* v. *Univ. of Kansas*, 371 F.3d 1233,1237 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 [1998]). Since Title VII is a remedial statute, courts should "employ[] a liberal definition of adverse employment action and [apply] a case-by-case approach." *Abuan v. Level 3 Communications, Inc.*, 353 F.3d 1158, 1174 (10th Cir. 2003). Adverse employment action does not encompass every action taken by a plaintiff's employer that may affect the plaintiff's future employment opportunities. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004). "[T]he challenged action must rise above 'a mere inconvenience or an alteration of job responsibilities.'"

*Abuan,* 353 F.3d at 1174 n.5 (quoting *Sanchez*, 164 F.3d at 532). The employer's actions must be materially adverse to the employee's job status. *Hillig*, 381 F.3d at 1033.

Plaintiff asserts that he suffered an adverse employment action because he was not afforded his original seniority date and therefore he suffered "monetary losses in the form of wages or benefits." (Pl.'s Resp. at 8.) Changes to Plaintiff's salary, benefits, or seniority are materially significant actions which amount to an adverse employment action. *See Sanchez*, 164 F.3d at 532 (adverse employment actions include, but are not limited to, monetary losses in the form of wages or benefits); *Flannery v. Trans World Airlines, Inc.*, 160 F.3d 425, 428 (8th Cir. 1998) (noting that reduced seniority can result in an adverse employment action). Thus, Defendant's actions were materially adverse to Plaintiff's job status. *See Hillig*, 381 F.3d at 1033. Accordingly, Plaintiff satisfied the second prong of his prima facie case.

Next, Defendant asserts that Plaintiff cannot prove the "third prong of his prima facie case of discrimination because there is no evidence in the record that Plaintiff was treated less favorably than other similarly situated to him." (Def.'s Br. at 12.) Plaintiff claims he was treated less favorably than Marin and Robinson. (Pl.'s Resp. at 8.) Plaintiff's entire argument in support of his prima facie case consists of four sentences without any citation to the record. (Pl.'s Resp. at 11.) While conclusory allegations, without any citation to the record are not sufficient to defeat summary judgment, *Salguero v. City of Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004), I reluctantly address Plaintiff's argument. Plaintiff argues as follows:

> [a]lthough it is true that [Plaintiff's] return to the Sheriff's Department was under Undersheriff Simonet's rule, Marin's and Robinson's returns were during Undersheriff Oliva's rule. It was only after Oliva afforded Marin and Robinson their original seniority dates, that [Plaintiff]'s discrimination claim arose. Once

> that occurred, [Plaintiff] then raised his request with Oliva. Oliva denied
> [Plaintiff]'s request.

(*Id.* at 8–9.)  I will assume without deciding that Marin, a Mexican-American male, and Robinson, an African-American female, are both outside Plaintiff's protected class.  *See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987) (holding that discrimination against African-American females could exist even in the absence of discrimination against African-American men or white women).  Further, viewing the facts in a light most favorable to Plaintiff, both Marin and Robinson were treated more favorably than Plaintiff because their reinstatement date was their original date of hire.  Thus, based upon the foregoing assumptions I conclude that Plaintiff has demonstrated a prima facie case of discrimination.

### b. *Defendant's Legitimate Nondiscriminatory Reason for Failing to Reinstate Plaintiff's Seniority*

If the plaintiff establishes a prima facie case, "the defendant must carry the burden to provide a legitimate nondiscriminatory reason for" the adverse employment action.  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  Defendant's burden is:

> merely to articulate through some proof a facially nondiscriminatory reason for the [adverse employment action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion.  However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (citations omitted) (footnote omitted).  Defendant asserts that Oliva denied Plaintiff his seniority reinstatement because

Simonet had previously denied Plaintiff's earlier request.[4]  (Def.'s Br. at 14.)  Defendant's explanation as to why it denied Plaintiff his reinstatement of seniorty, (Def.'s Br. at 14; Def.'s Reply at 8), is more than sufficient to meet Defendant's burden at this stage.

    ***c.***    ***Pretext***

If the defendant meets its burden at the second stage of showing a "legitimate nondiscriminatory reason for [the adverse employment action]," the plaintiff can still prevail if he can show "pretext." *McKnight*, 149 F.3d at 1128.  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 [10th Cir. 1997].)

As stated above, Defendant asserts that Oliva denied Plaintiff his seniority reinstatement because Simonet had previously denied Plaintiff's earlier request.  (Def.'s Br. at 14.)  Plaintiff asserts that this denial was a pretext for discrimination because Marin and Robinson both had their seniority reinstated when they returned to work for Defendant.  (Pl.'s Resp. at 11.)  When Plaintiff was rehired by Defendant in June 1998, Plaintiff requested that his sick and vacation leave accruals, seniority, and longevity pay be based upon his original hire date with Defendant.

---

[4]Defendant does not specifically articulate its legitimate nondiscriminatory reason for failing to reinstate Plaintiff's seniority.  In Defendant's opening and reply briefs, it simply discusses the prima facie case and the pretext component of the inquiry.  It is evident, however, from Defendant's pretext discussion, that Defendant has a legitimate nondiscriminatory reason for its actions despite not expressly stating the reason.  I caution Defendant in the future to expressly identify each component of the *McDonnell Douglas* burden-shifting analysis.

(*Id.*, Statement of Undisputed Material Facts ¶ 14; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 14.) Simonet denied Plaintiff's request. (*Id.*, Statement of Undisputed Material Facts ¶ 15; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 15.) Accordingly, Plaintiff's vacation and sick leave accrual rates, longevity pay rate, and seniority have been based upon a continuous service/hire date of June 11, 1998. (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 16.)

Upon learning that Defendant reinstated Marin's seniority, Plaintiff filed a formal grievance under the career service grievance process, which Oliva denied. (*Id.*, Statement of Undisputed Material Facts ¶ 37; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 37.) Plaintiff subsequently appealed Oliva's decision to the Hearing Officer of the career service board. (*Id.*, Statement of Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 39.) The Hearing Officer deemed that Plaintiff abandoned his administrative appeal, and dismissed Plaintiff's appeal with prejudice on August 28, 2002. (*Id.*, Statement of Undisputed Material Facts ¶ 40; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 40.) Plaintiff did not exercise his right to appeal the Hearing Officer's dismissal to the career service board. (*Id.*, Statement of Undisputed Material Facts ¶ 41; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 41.) After learning that Defendant reinstated seniority for Anna Robinson, an African-American female, Plaintiff pursued a grievance and demand for arbitration under the collective bargaining agreement between Defendant and the Deputy Sheriffs' union. (*Id.*, Statement of Undisputed Material Facts ¶ 42; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 42.) Defendant denied the grievance and demand for arbitration as untimely and beyond

the scope of the collective bargaining agreement. (*Id.*, Statement of Undisputed Material Facts ¶ 43; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 43.)

Plaintiff was not treated differently than Marin and Robinson. Like Plaintiff, Oliva initially denied Marin's and Robinson's request for reinstatement of seniority. (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 25, 33; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 25, 33.) Defendant ultimately reinstated both Marin's and Robinson's seniority after these individuals filed formal appeals through the career service grievance process. (*Id.*, Statement of Undisputed Material Facts ¶¶ 26–31, 34–36; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶¶ 26–31, 34–36.) Unlike Marin and Robinson's appeals, the Hearing Office denied Plaintiff's appeal because he determined that Plaintiff abandoned his administrative appeal. Specifically, the Hearing Officer determined that

> [Plaintiff] was previously ordered to show cause why this appeal should not be dismissed for lack of jurisdiction. [Plaintiff's] response was due on or before August 26, 2002. [Plaintiff] has failed to respond to the Show Cause Order or file a request for extension of time . . . Accordingly, . . . the appeal is DISMISSED with prejudice.

(Def.'s Br., Ex. A[10][G] [Hearing Officer's Dismissal Order].) Plaintiff did not pursue his appeal further with the career service board. (*Id.*, Statement of Undisputed Material Facts ¶ 41; *admitted at* Pl.'s Resp., Resp. to Undisputed Facts ¶ 41.) Thus, Plaintiff cannot show that Oliva's denial of Plaintiff's request for reinstatement of seniority was a pretext for discrimination, because Oliva handled the requests by Marin and Robinson in an identical manner.

Plaintiff's pretext argument consists of four sentences without any citation to the record. (Pl.'s Resp. at 11.) While conclusory allegations, without any citation to the record are not

sufficient to defeat summary judgment, *Salguero*, 366 F.3d at 1178, I reluctantly address Plaintiff's argument. Plaintiff argues as follows:

> in arguing that [Plaintiff] cannot prove pretext, [Defendant] solely relies on Oliva's contention that he believed that Simonet's decision was appropriate. However, the inaccuracy of that belief is belied by the fact that the Career Service Authority required Oliva to provide full seniority to Marin and Robinson. Thus, it should be clear to Oliva, that Simonet's decision was not correct. Given that the only difference between Marin and Robinson (on the one hand) and [Plaintiff] (on the other hand) is [Plaintiff's] race and gender, this is sufficient evidence that [Plaintiff] has been the subject of Title VII discrimination.

(Pl.'s Resp. at 11.) As described above, Oliva treated Plaintiff the same as he treated Marin and Robinson. He denied their initial requests. Plaintiff failed to adequately challenge this decision, unlike Marin and Robinson. Thus Defendant's later decision to give Marin and Robinson benefits is significantly different from Defendant's earlier decision with respect to Plaintiff, and Oliva's treatment of Marin and Robinson is not an appropriate basis for Plaintiff's discrimination claim. Moreover, if Plaintiff is insinuating that Oliva's decision to rely on Simonet's earlier decision is, *per se*, discrimination, this argument is incorrect.

In evaluating pretext, the court must be careful not to second-guess business decisions made by employers, in the absence of some evidence of impermissible motives. *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004); *see also Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1403–04 (10th Cir. 1988). The "'relevant inquiry is not whether [Defendant's] proffered reasons were fair or correct, but whether [Defendant] honestly believed those reasons and acted in good faith upon those beliefs.'" *Id.* (quoting *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1318 [10th Cir. 1999] ). Title VII does not require an employer's business decisions to be wise or logical — just nondiscriminatory. *Beaird v. Seagate Tech., Inc*, 145 F.3d 1159,

1169 (10th Cir. 1998). Here, Defendant argues that Oliva believed Simonet's earlier decision to deny Plaintiff's request for reinstatement of seniority was proper. (Def.'s Reply at 8; Def.'s Br., Statement of Undisputed Material Facts ¶¶ 37, 38; *admitted at* Pl's Resp., Resp. to Undisputed Facts ¶¶ 37, 38.) Thus, the sole question is whether this judgment is so implausible, incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief. *Stover*, 382 F.3d at 1076. The evidence, consisting solely of Plaintiff's unsupported allegations, is insufficient. This conclusion is further supported by the fact that irrespective of Simonet's decision regarding Plaintiff, Oliva initially denied Marin, Robinson, and Plaintiff's request for reinstatement of seniority. Thus, viewing the facts in a light most favorable to Plaintiff, Plaintiff cannot demonstrate pretext on these facts. Accordingly, Defendant is entitled to summary judgment on Plaintiff's first claim for relief — race and sex discrimination under Title VII.

3.   *Section 1983 Claim*

Plaintiff's second claim for relief is styled "violation of 42 U.S.C. § 1983." (Compl. ¶¶ 31–34.) Plaintiff specifically agreed to dismiss this claim with prejudice in the preliminary pretrial order. (Prelim. Pretrial Order at 2.) The preliminary pretrial order was executed by both parties and approved by the magistrate judge. (*Id.* at 8.) Curiously, Plaintiff has not withdrawn his section 1983 claim and continues to argue in support of this claim in his response to Defendant's motion for summary judgment. (Pl.'s Resp. at 11.)

While Plaintiff initially pled a section 1983 claim, this does not overcome the Pretrial Order Rule, embodied in Rule 16(e) of the Federal Rules. "After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the

subsequent course of the action unless modified by a subsequent order." Fed. R. Civ. P. 16(e). An order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation. *Hullman v. Board of Tr.*, 950 F.2d 665, 668 (10th Cir. 1991). The resulting pretrial order "measures the dimensions of the lawsuit, both in the trial court and on appeal." *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403 (10th Cir. 1997). "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue, attorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issue of the trial will be." *Rios v. Bigler*, 67 F.3d 1543, 1549 (10th Cir. 1995). An issue that is not included in the pre-trial order is "not part of the case before the district court." *Gowan v. United States Dep't of Air Force*, 148 F.3d 1182, 1192 (10th Cir. 1998).

The pre-trial order mentioned Plaintiff's section 1983 claim, and Plaintiff explicitly agreed to dismiss the claim with prejudice. (Prelim. Pretrial Order at 2.) Plaintiff represented to Defendant and this court that he was no longer pursuing his section 1983 claim. (*Id.*) Thus, the subsequent pre-trial order which the parties executed and the magistrate judge approved, excluded the section 1983 claim for all intents and purposes. (*Id.*) Accordingly, the section 1983 claim is "not part of the case before the district court." *Gowan*, 148 F.3d at 1192. Thus, Defendant is entitled to summary judgment on Plaintiff's section 1983 claim.

### *4. Conclusions*

Based on the foregoing it is therefore ORDERED that:

1. Defendant's motion for summary judgment (# 17) is GRANTED.

    2.  The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing all claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

    Dated this  4th  day of August, 2005.

              BY THE COURT:

              s/Edward W. Nottingham
              EDWARD W. NOTTINGHAM
              United States District Judge